UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARVIN MCNEIL,

        Petitioner,

v.

PEOPLE OF THE STATE OF NEW YORK,

        Respondent.

**MEMORANDUM AND ORDER**
12-CV-0788 (LDH)

L SHANN D ARCY HALL, United States District Judge:

    Petitioner Marvin McNeil, proceeding pro se, petitions pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus vacating his conviction.

## BACKGROUND

    This petition arises out of Petitioner's convictions after trial of one count of robbery in the second degree and one count of robbery in the third degree.

### I.    Robbery at Modell's Sporting Goods

    Theresa McMahon worked as the general manager of a Modell's Sporting Goods store in Freeport, New York. (Trial Tr. ("Tr.") 267, ECF No. 11-2.) At approximately 9:00 p.m. on July 2, 2008, McMahon observed what she believed to be a theft underway in the footwear department. (*Id.* 271–73.) Specifically, via the store's security surveillance camera, McMahon observed a man (later identified as Petitioner) stuffing a pair of shoes down his pants. (*Id.* 272–73, 277, 329.) As McMahon watched the security monitor, she observed an individual (later identified as Maddy Pearl) approach Petitioner, take a pair of shoes out of a box, remove an anti-theft sensor, and hand the shoes to Petitioner. (*Id.* 272–74, 276–77, 282, 324, 332, 334.)

Petitioner then put this second pair of shoes in his pants. (*Id.* 273–74.) McMahon paged the store's security personnel to the footwear department. (*Id.* 274, 323.)

Eugene Noel, who worked as store security, responded to the page. (*Id.* 275, 290, 320, 323.) From his post near the store's entrance, Noel observed Petitioner and Pearl in the footwear department. (*Id.* 288–89, 323–25, 332.) When Petitioner and Pearl approached, Noel instructed the pair to remain in the store in order to speak to the manager. (*Id.* 288, 325.) Pearl then pushed her way past Noel and exited the store. (*Id.* 275, 329.) Petitioner "rammed into" Noel and "very viciously" "jammed two thumbs into [Noel's] rib," causing Noel to drop his glasses and almost collapse to the floor. (*Id.* 330–31, 333.) Petitioner then exclaimed, "You can't stop me." (*See id.* 329–30, 333 ("Noel: The gentleman [petitioner] [said] I can't stop him.").)

McMahon observed the attack on Noel on the surveillance monitor, raced to the front door, and instructed an associate to call 911. (*Id.* 275–76, 291.) Petitioner and Pearl escaped before police arrived. (*Id.* 334.) McMahon also confirmed that there were two empty boxes in the footwear department that should have each contained a pair of sneakers. (*Id.* 281–82, 285.) The next day, McMahon provided the officers a copy of the surveillance footage. (*Id.* 277, 279, 332.)

These facts were established at trial through witness testimony and surveillance footage. (*Id.* 267, 285, 319.)

## II.   Robbery at National Wholesale Liquidators

On August 13, 2008, at the National Wholesale Liquidators store in West Hempstead, New York, Reamus Watson was working as a plainclothes security guard. (Tr. 383–84.) A black male (later identified as Petitioner) and a black female (later identified as Maddy Pearl) entered the store around 1:15 p.m. (*Id.* 385, 388, 390, 444–45, 452.) Watson subsequently observed

2

Petitioner and Pearl place store merchandise—batteries, soda, candy bars, and underwear—into their pants and into a bag. (*Id.* 385–86, 391.) Watson then proceeded to the front of the store to intercept the pair before they could exit. (*Id.* 386.) Approximately fifteen minutes later, Watson told his two colleagues, "Standby, we have two shoplifters coming out." (*Id.* 386.)

Petitioner and Pearl headed towards the store exit, passing the registers without stopping. (*Id.* 387, 435.) As the pair attempted to exit the store, an alarm sounded, prompting Watson to ask Petitioner and Pearl about the contents of their bags. (*Id.* 387, 412, 447.) Pearl ran out the door past store manager Himmat Singh and a second store employee, Eddy Carrion. (*Id.* 449.) Carrion unsuccessfully attempted to stop Pearl and chased her into the parking lot but was unable to apprehend her. (*Id.* 389, 449.) When confronted at the store exit, Petitioner grabbed Watson's two arms and shoved Watson against a wall. (*Id.* 388.) Watson freed himself from Petitioner's grasp and called out for help, prompting Singh and Carrion to assist. (*Id.* 388–89, 447.) Carrion tackled Petitioner, but even on the ground, Petitioner continued to fight, requiring effort from Singh and Watson to restrain Petitioner, who was ultimately handcuffed. (*Id.* 389, 392–94, 450–51.) Some of the merchandise Watson observed Petitioner place into his pants, including batteries and soda, fell out of Petitioner's pants during the altercation. (*Id.* 391.)

Watson and Singh escorted Petitioner to the security office. (*Id.* 394.) Carrion called 911. (*Id.* 394, 451.) At around 1:40 p.m., Nassau County Police Department officers Natalie Coppola and Nicholas Penna responded to the store. (*Id.* 472, 491–92.) Petitioner was taken into custody. (*Id.* 494.) At the scene, Officer Coppola collected still photographs from the store's video surveillance system and interviewed witnesses. (*Id.* 409, 443, 477–78.)

These facts were established at trial through witness testimony and still images taken from surveillance footage. (*Id.* 382, 409, 415, 441, 443 471, 489.)

3

### III.     Procedural History

On March 18, 2009, the jury found Petitioner guilty of one count of robbery in the second degree and one count of robbery in the third degree. (Tr. 674–75.) Before sentencing, Petitioner filed a pro se motion to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30, arguing that the trial court should set aside the verdict on account of: (1) newly discovered, exculpatory video evidence and (2) prosecutors' improper failure to preserve video evidence. (Pet'r Mot. to Set Aside Verdict 2–4, ECF No. 11-3.) The motion was denied on October 9, 2009. (Order Declining to Set Aside Verdict 4, ECF No. 11-3.) Petitioner did not appeal. (Pet. 7, ECF No. 1.) On October 27, 2009, Petitioner was sentenced to three and a half years' incarceration on the second-degree robbery charge, to run concurrent with a sentence of between one year and three and a half years' incarceration on the third-degree robbery charge, followed by five years post-release supervision. (Sentencing Tr. 6, ECF No. 11-4.)

On direct appeal, Petitioner argued both that the evidence at trial was not legally sufficient to find him guilty of robbery and that the convictions were against the weight of the evidence. (Pet'r App. Div. Br. 22–37, ECF No. 11-5.) The Appellate Division rejected both arguments. *See People v. McNeil*, 86 A.D.3d 650, 650, 927 N.Y.S.2d 387, 389 (N.Y. App. Div. 2011). The Court of Appeals denied Petitioner leave to appeal on December 6, 2011. *See People v. McNeil*, 18 N.Y.3d 860, 962 N.E.2d 293 (N.Y. 2011).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a petition for a writ of habeas corpus by a person in custody pursuant to a state court judgment may only be brought on the grounds that his custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petitioner is

required to show that the state-court decision, having been adjudicated on the merits, was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013).

For the purpose of federal habeas review, "clearly established Federal law" is defined as "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is "contrary to," or an "unreasonable application of," clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law, (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts, or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id.* at 412–13. Factual determinations made by the state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. Weight of the Evidence

Petitioner's first claim for relief is predicated on the argument that his convictions were against the weight of the evidence. (Pet. 6.) In opposition, Respondent contends that this claim is not cognizable on federal habeas review. (Resp.'s Br. 2, ECF No. 11.) The Court agrees.

The Supreme Court "ha[s] stated many times . . . 'federal habeas corpus relief does not lie for errors of state law.'" *Swarthout v. Cooke*, 562 U.S. 219 (2011) (per curiam) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)). A claim that a verdict rendered in a New York state

5

court is against the weight of the evidence is indeed a question of state law. That is, it is a claim "grounded in New York Criminal Procedure Law § 470.15(5) which empowers New York State intermediate appellate courts to make weight of the evidence determinations.'" *Velasquez v. Heath*, No. 11-CV-5440, 2015 WL 800237, at *4 (E.D.N.Y. Feb. 25, 2015) (quoting *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006). As such, Plaintiff's weight of the evidence claim is beyond the reach of this court and is denied accordingly.[1]

## II. Ineffective Assistance of Counsel

Petitioner asserts a number of bases upon which he claims he was denied effective assistance of counsel. Specifically, Petitioner complains that his trial counsel failed to: (1) conduct an investigation or obtain any reports from an investigator; (2) review the district attorney's early case assessment bureau records; (3) interview witnesses concerning their prior statements to police and grand jury testimony; (4) visit the crime scene and make any viable suppression motion based thereon; and (5) make any omnibus motions, including a request for a bill of particulars. (Pet. 6–11.) Respondent maintains that Petitioner's ineffective assistance of counsel claim is unexhausted precluding review.[2] (Resp.'s Br. 7–8.) Respondent is correct, in part. Plaintiff failed to raise an ineffective assistance of counsel claim on direct appeal. And, as Respondent correctly argues, exhaustion is typically a condition precedent to federal habeas

---

[1] Respondent devotes a portion of its memorandum of law to arguing that any claim raising the sufficiency of the evidence should also be denied. (Resp.'s Br. 3–6, ECF No. 11.) However, upon review of the petition in this case, the Court cannot discern any sufficiency of the evidence claim, even assuming the strongest argument that the petition might suggest. (Pet. 6, ECF No. 1.)

[2] Respondent rightly notes that certain aspects of Petitioner's ineffective assistance of counsel claim are dehors the record, which precluded Petitioner from raising them on direct appeal. (Resp.'s Br. 7.) As a practical matter, Petitioner may still pursue relief in state court, which is required for exhaustion. *See* N.Y. Crim. Proc. L. § 440.10. Other aspects of Petitioner's ineffective assistance of counsel claim could have been raised below as part of Petitioner's direct appeal to the state court. Having failed to do so, those aspects of Petitioner's ineffective assistance claim are procedurally barred. *See id.* § 440.10(2)(c). However, because as discussed above, the Court denies Petitioner's ineffective assistance of counsel claim on the merits, the Court need not parse through the consequences of the procedural bar.

review.  *See* 28 U.S.C. § 2254(b)(1).  However, as an exception where, as here, a court denies a claim on the merits, failure by a Petitioner to exhaust the remedies available in state court need not operate as a bar to review.  *See id.* § 2254(b)(2).  To succeed on a claim of ineffective assistance of counsel, a petitioner must "establish deficient performance and prejudice."  *See Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Deficiency requires "a defendant [to] show that 'counsel's representation fell below an objective standard of reasonableness.'" *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (quoting *Strickland*, 466 U.S. at 688).  Prejudice, on the other hand, requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).  Put another way, prejudice exists only where a defendant can "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 694).  Of particular relevance here, a court must analyze prejudice "in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).  And, where "[t]here was ample evidence in the record to support [a defendant's] guilt," he "cannot show prejudice." *Id.* at 391; *see also United States v. Hasan*, 586 F.3d 161, 170 (2d Cir. 2009) (holding that a postconviction petitioner failed to demonstrate prejudice "given the overwhelming evidence against him at trial").  Such is the case with respect to each robbery conviction challenged here.

With respect to the robbery of the Modell's store, Petitioner was convicted of robbery in the second degree.[3]  The Modell's general manager testified to observing Petitioner's and Pearl's

---

[3] As is relevant here, "a person is guilty of robbery in the second degree when he forcibly steals property and when: 1. He is aided by another person actually present; or 2. In the course of the commission of the crime or of immediate

7

theft of the shoes via the live video surveillance feed, and to finding the shoes missing from their displays after returning to the footwear department following the robbery. (Tr. 266–67, 271–74, 281–82.) The store's security guard Noel testified about attempting to stop Petitioner and Pearl at the store's exit, and to the violence Petitioner used as he attempted to force his way out of the store. (*Id.* 319, 325, 329–31, 333.) Both McMahon and Noel identified Petitioner and Pearl at trial. (*Id.* 277, 324–25, 332, 329.) Modell's surveillance video corroborated McMahon's and Noel's eyewitness testimony. (*Id.* 285.)

The evidence supporting Petitioner's conviction of robbery in the third degree[4] of the National Wholesale Liquidators is equally overwhelming. Store manager Watson testified about observing Petitioner and Pearl place store merchandise into their pants and into a bag, then pass the registers without stopping. (*Id.* 384–87, 435.) Watson and fellow manager Singh testified about attempting to stop Petitioner at the store's exit, and about the ferocious resistance Petitioner displayed, during which store merchandise fell from Petitioner's pants. (*Id.* 388–89, 391–94, 450–51.) Still photos from the store's surveillance system corroborated Watson's and Singh's eyewitness testimony. (*Id.* 409–11, 443, 477–78.) Both employees identified Petitioner at trial: Singh by name and Watson by pointing out Petitioner in the courtroom. (*Id.* 388, 390, 451–52.) Two police officers also identified Petitioner by pointing him out in the courtroom as the man they arrested after responding to the store. (*Id.* 474–75, 493.)

Ultimately, there is simply no legitimate claim of prejudice here. Or as aptly stated by Respondent, "it strains credulity to think that, in a case in which both incidents were captured on surveillance cameras and a video recording and still photographs were viewed by the jury,

---

flight therefrom, he or another participant in the crime: (a) Causes physical injury to any person who is not a participant in the crime." N.Y. Penal L. § 160.10.

[4] "A person is guilty of robbery in the third degree when he forcibly steals property." N.Y. Penal L. § 160.05.

8

greater investigation by trial counsel would have led to a more favorable verdict for [P]etitioner." (Resp.'s Br. 8.) Petitioner's ineffective assistance of counsel claim is denied.

## III. Prosecutorial Misconduct Claims

Petitioner's third and fourth claims allege various forms of prosecutorial misconduct. With respect to the third claim, Petitioner contends that prosecutors withheld exculpatory evidence in the form of surveillance footage from the Modell's surveillance system and failed to preserve National Wholesale Liquidators' video footage of the robbery. (Pet. 9.) As to the fourth claim, Petitioner maintains that prosecutors knowingly presented false testimony. (*Id.* 10–11.) Here again, Respondent maintains that Petitioner's claims are unexhausted and barred from review. (Resp.'s Br. 10–13.) This time the Court agrees fully.

As noted generally above, "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). State remedies are deemed exhausted where a petitioner has "(i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Att'y Gen. of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001). Significantly, "[a] defendant may not seek collateral review of claims that could have been raised on direct appeal and were not." *Parrish v. Lee*, 10-CV-8708, 2015 WL 7302762, at *7 (S.D.N.Y. Nov. 18, 2015). And a defendant is only entitled to one direct appeal. *See* N.Y. Court Rules § 500.20(a)(2) (" . . . only one application is available.").

In this case, Petitioner has availed himself of his only direct appeal. On that appeal, Petitioner failed to raise any claim for prosecutorial misconduct, rendering the claim

unexhausted. *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991) (holding that petitioner's failure to present to the highest court constitutional questions relating to, among other things, counsel's failure to raise prosecutorial misconduct precluded federal habeas review). Indeed, that Plaintiff did not exhaust his prosecutorial misconduct claim is conceded in the petition itself. (Pet. 9, 11.) Moreover, because each of the grounds on which Petitioner presses his prosecutorial misconduct claims—production of the Modell's surveillance footage,[5] the preservation of the National Wholesale Liquidators' video footage,[6] and purported falsity in witness testimony[7]—involve matters that appear on the record, Petitioner is now precluded from raising those matters on a subsequent motion to vacate. *See* N.Y. Crim. Proc. Law § 440.10(2)(c)[8] (barring review if a claim could have been raised on direct appeal because it involved matters appearing on the record). In other words, Petitioner's prosecutorial misconduct claims are procedurally barred from further state court review.

Nevertheless, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Grey*, 933 F.2d at 120. Under such circumstances the court may deem the claim exhausted. *Id*. at 120–21. To allow federal review, however, a petitioner must "show cause for the [procedural] default

---

[5] The facts underlying this portion of the claim were adduced at trial, when defense counsel cross-examined the store's manager McMahon about why she did not provide police with all the available footage from all of the store's surveillance cameras. (Tr. 312–13.)

[6] The facts underlying this portion of the claim were also adduced at trial, when defense counsel cross-examined the store's security guard Watson concerning whether the store recorded video footage (rather than merely still images) of Petitioner's robbery, and whether the store turned over that video footage to police. (Tr. 397–99.)

[7] While Petitioner does not appear to specify the particular testimony at issue, all of Noel's trial testimony and grand jury testimony necessarily "appeared on the record of the proceedings underlying [Petitioner's] judgment" and therefore could have been raised on direct appeal. N.Y. Crim. Proc. L. § 440.10(2)(c).

[8] N.Y. Crim. Proc. Law § 440.10(2)(c) states in pertinent part that, "the court *must* deny a motion to vacate a judgment when: . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him."

and prejudice, or demonstrate that failure to consider the claim[s] will result in a miscarriage of justice." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). In determining whether "cause" exists, the Supreme Court has directed district courts to limit their inquiry to whether "some external impediment" inhibited the petitioner from asserting his claim. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Petitioner offers none.[9] Petitioner also fails to demonstrate that dismissal of his claim will result in a miscarriage of justice. The miscarriage of justice exception is limited to "extraordinary cases, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012). Having set out above the abundance of evidence supporting Petitioner's convictions, the Court need not repeat it here. Suffice it to say, this case is not an extraordinary case, and no miscarriage of justice will result from the denial of federal habeas review. The Court rejects Petitioner's prosecutorial misconduct claims.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus is DENIED. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will issue. *See* 28 U.S.C. § 2253(c); *see also Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–13 (2d Cir. 2000).

SO ORDERED.

Dated: Brooklyn, New York  
      July 14, 2021

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge

---

[9] Because Petitioner has failed to show cause for his procedural default, the Court need not reach the question of whether he would be prejudiced by dismissal of the claim. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [that petitioner] showed prejudice.").

11